Case 21-3773, Katherine Merhulik v. Weltman Weinberg and Reis Company, LPA. Time not to exceed 15 minutes per side. Mr. Owens, you may proceed for the appellant when ready. Good morning, Your Honors. My name is Mark Owens. I'm the attorney representing the appellant, Katherine Merhulik, now known as Katherine Leeds. I reserve three minutes for rebuttal. I'd like to first wish you all a happy St. Patrick's Day. I do have a green lapel pin, but could not find a green tie, unfortunately. Well, thank you. Weltman Weinberg and Reis, in this case, failed to interview or hire Katherine Leeds, eminently qualified Katherine Leeds for two open collection specialist positions in November 2017 and January 2018 for no other reason than her engagement in the protected activity of suing the firm in February of 2017 for age discrimination in connection with her termination from employment as part of a reduction in force. It was predetermined by Weltman in this case that Ms. Leeds would not be rehired. We know this for three reasons. We know it because the decision makers who were involved in her termination of employment in 2016 as part of the RIF were also involved in the determination that she would not be interviewed or considered for the open collector positions post-RIF. We know because of her extensive collections history. This was a no-experience-required entry-level collections position that she applied for twice. She had over 30 years of collection experience, including seven with the Weltman firm in the position of legal collector, as well as her promotion before she was terminated. She spent three years in quality assurance where she monitored collectors and helped to train them and make sure that they were following the proper protocols. She had some work with the same outfit and they didn't like her work too well. They kind of criticized it because she wasn't fast enough or whatever. Yes, Judge Silas, Weltman does make that argument that they had issues with performance. However, we show in our briefing, the evidence show that her overall performance rating was meets expectations. She had glowing reviews from her supervisor at the time, Kelly Toppin, who provided testimony in the case that he never had an issue with her being able to perform and meet her goals. We also had Kamal Strouder, who was a lead collector at the time that worked with Ms. Leeds, who said the same thing. Isn't that after the fact affidavits that were submitted? It seems to me the most powerful evidence is just reading the improvement plans and the annual reviews, all of which say that she was not meeting the quotas either in terms of number of calls per day or in terms of money brought in. In a lot of these cases, there's a subjective reason for the dismissal or for the refusal to hire and that makes it difficult. But here, I view this as quite objective in terms of there's contemporaneous materials explaining this concern. Well, I would submit to you that any collector who works for any period of time is going to have ups and downs. It's a very difficult position. We had testimony from Mr. Toppin and Mr. Strouder that it was typical for the firm to continually increase goals to keep the pressure on the collectors and make it very difficult for them to meet their numbers three months in a row. It was commonplace for collectors to have write-ups. That was just part of the job. That's part of the reason why it's such a high burnout position. That does not mean she wasn't qualified for the position. Isn't that a legitimate reason? That seems to me to be perfectly rational to say, well, we've had experience with this person and they haven't been meeting our goals, even if the goals are quite demanding. That's not an illegal basis not to rehire somebody. Well, I don't believe so in this case, Your Honor, because what it constitutes here is heightened scrutiny of her application. Nobody else receives such scrutiny of prior job performance. As a matter of fact, applicants who had never worked for Weltman, all they do is ask them what their responsibilities were in their prior position and whether there was longevity in their role, why they left their prior position. They took their resumes at face value. Again, this was an entry-level collector position. You could come out of high school and be hired for this position. It didn't require any particular skills or competencies. Ms. Lees, on the other hand, was exceptionally qualified, had the skills. She had been a collector before for many, many years. She was so good, in fact, they promoted her. What is the evidence of a retaliatory hiring decision other than the decision-makers were the same as with the prior employment and would be familiar with your client? Other than that bare fact, what would be the evidence of discriminatory or retaliatory intent? Well, as I mentioned, the heightened scrutiny. What's the evidence of the heightened scrutiny? You can say heightened scrutiny, but what's the evidence of that? Well, the most glaring aspect of that, the glaring evidence of that, is Mr. David Tomer, who was the head of the collections department with the firm. Unlike any other applicant's application, Ms. Lees' application was sent right up to Mr. Tomer by email, and he immediately said, oh, no, we're not going to hire her. I don't think she's appropriate to be hired. Should we turn her down now and move on, or should we wait for the head of the HR to get back from vacation? Now, he had been subpoenaed already for a deposition in the case, notice for deposition. He then was deposed ten days later. In the deposition testimony, he said under oath, given Ms. Lees' experience with our firm and with her background, I don't see any reason that she wouldn't have been considered for the job. Now, why would he say that if the firm really believed that Ms. Lees wasn't qualified due to some past performance issues? Is that the same person who made the final decision to hire somebody else? Well, he made the decision not to hire Ms. Lees. Other people below him chose who they hired, but he clearly made the decision that Ms. Lees would not be hired. He was over the hiring managers. Now, it's not irrational to bring to bear preexisting information about an applicant. The question is, are you doing it in a manner that's invidious or exemplifies invidious intent? But if you want to, if you have additional information about people who were previously employed and you want to employ that in a hiring decision, that in and of itself is not a bad thing, is it? Not in and of itself, Your Honor. However, with Ms. Lees, her performance history indicated nothing that would have first resulted in her being terminated. Her performance was acceptable by Weltman's own standards. She met or exceeded expectations for several years prior to her being let go as part of the RIF. And if it truly is a reduction in force, why would you not rehire somebody when positions open up who have those qualifications? Here, the only differentiating factor is that she had sued the law firm for age discrimination. They obviously were not happy about that. That's not the only differentiating factor. She didn't have any collections experience for six years. I know she had more experience overall, but the candidate that was hired had more recent experience. Well, the candidate that was hired had three and a half years of total collections experience. But that was the last three and a half years, right? It was. I mean, we have case law suggesting that more recent experience is a perfectly legitimate basis for distinguishing between candidates. Well, I would argue that that three and a half years does not counterbalance the 30-plus years of experience Ms. Lees had. And her most recent employment with the firm the last four years was as a quality assurance monitor. It was in a different position, though, right? A different position, but it was a position that required extensive knowledge of the collections practice, because she was actually monitoring those who do the job. So to say that she didn't have recent collections experience, I think, is an easy way for Weltman to try to say, let's think of an excuse that sounds legitimate, so that we don't have to consider her for these open positions. I would reiterate that this court held in Moore v. Philip Morris that all that's required is to present significant probative evidence to demonstrate that there's more than some metaphysical doubt as to a material fact. I think it's important to keep in mind this is a summary judgment case. This isn't a case that was decided at trial that we're appealing. She wasn't even allowed to get to a jury. The district court set a very high bar, not the low bar that's intended by Civil Rule 56. There are genuine issues of fact that abound in this case across all issues. And I think that's important. What do we have to look at to determine if your client has established a prima facie case? Do we have to take into account the characteristics of the people who actually were hired? And what are the factors that you think we should look at here? For the retaliation claim, Your Honor, this court held in Wexler v. White's Fine Furniture that there must be credible evidence that the applicant's qualifications are at least equivalent to the minimum objective criteria required for the position. Here, the minimum objective criteria is no prior experience required. She clearly met that and exceeded it. But there were tons of applicants who satisfied that, including many others who were not hired. However, those that had prior collections experience were considered by the firm. They were phone screened. Many of them went past phone screen and were then taken to the next level for telephone interviews. Some of them had in-person interviews. How many and to what extent is part of the question in this case because the discovery was such that Weltman made it impossible to try to figure out exactly who was interviewed. We know for the first job posting, a woman was interviewed, Tanya Brooks. She was interviewed, offered the job, and then it was rescinded because she failed the background check. Prior to that coming to light in discovery, Weltman had always claimed that the first job posting was just an evergreen posting that they had, and they decided they didn't need someone, so they took it down. They didn't know about this woman's background when she was selected, did they? That's true. That's true. They didn't know about her background when she was selected, and then they rescinded the offer, ultimately took that first posting down, had a new posting in January of 2018 for the same position, an entry-level specialist position. Ms. Leeds applied again and got no consideration whatsoever. She wasn't even told. I think she received an email that said thank you, but no thank you, essentially. She had no phone screen, no telephone interview. They didn't even try to make it appear like they were considering her. You think if she had gotten a telephone interview, you wouldn't have had a case? I think if they had been smart enough to do that and at least go through the steps to make it appear that she was being considered just as any other applicant, I think we'd have a much more difficult case. I would agree with that, but they didn't do that here. Alright, I see that you're out of time. Thank you. Thank you, and you'll have your rebuttal. Good morning, Your Honors. My name is Brian Kelly. I represent the appellee in this case, Welton, Weinberg, and Reese. It is our position that this is a routine employment case. The district court carefully analyzed the evidence. It went to proper lengths to indicate that it was construing the evidence in favor of the appellant. It analyzed the law and applied it to very straightforward facts. There's nothing complicated or novel about this case. What this case presents here is the same thing this case presented in the district court, and that is the difficulty at the summary judgment stage of a party trying to prevail not on what's in the record, but on attorney arguments and inferences that are warranted. Your Honors identified some of the gaps in the record here, and if I may, I'd like to just address some of the more critical ones that were discussed this morning. Did you say she's got a prima facie case here? You know, Judge Seiler, I believe there's a good argument. There are two postings in issue, that to the extent the first posting was not filled, that the appellant didn't suffer an adverse employment action as to the first position for her discrimination claim or her retaliation. I was curious about the logical implications of the rule that you have to show that the position was filled. What if there was like smoking gun evidence that say, there's an email that says, well, we only got one applicant. The applicant is too old for this position. Let's just not hire anybody. That strikes me that that would violate the statute. Maybe you disagree. I'd be interested in that. I don't disagree, Judge. Why does the prima facie case require showing that it can be, that it must be filled if there are circumstances in which you can prove a violation even without it being filled? I certainly think there's room for interpretation there, and I don't think this case has to hinge on the pretext and the fact that this is really a pretext and an honest belief case. Some of the things that we talked about this morning go right to that. One, for example, that came up in all the briefing that really is important is the suggestion by the appellant over and over that she worked as a collector and then was promoted to a different role. The problem with that is that's something an attorney is saying. There's no evidence in the record. What the record shows is the appellant worked as a collector. She worked in the collector role about three years. She had five different written disciplinary actions. She had three performance improvement plans, and she had four performance reviews, all of which she was rated a two out of five on productivity. What the record shows is two months after being put on the third performance improvement plan, an opening was posted for a different position, and the appellant applied for that position. There's no evidence in the record there was a promotion. Nobody has said it was a promotion. So it's a suggestion that's just not right. Another one. Do you think it's, setting aside whether it is or is not a promotion, do you think that experience is useful for collections work, or do you think it was totally separate? It's a great question, Judge. There was an inference suggested that because she worked in a role that was monitoring the performance of collectors, that it would make the appellant a good or acceptable, perhaps a better collector. I suggest there's no support for that at all. The idea that someone whose role was essentially to take a checklist and say, I'm monitoring this person's calls. The person is giving a fair debt collection practices disclosure. The person is identifying who that person is. That's what the quality assurance monitor did. So to suggest that someone whose role was to do that, and that that made them a better or a qualified collector, being a coach or an overseer, would essentially be like saying, hey, I coached basketball for 13 years. I should be the point guard on the team. The fact that I can oversee or supervise something does not make me good at that job. And that also goes to the suggestion here when we talk about experience. The experience the appellant is claimed to have had. Suggestions over and over, the appellant had 30 years worth of experience as a collector. We're limited to the record here. The record shows the appellant had three years of experience as a collector, and when she had those three years, they were marred by, well, we don't have to revisit the verbal warnings, written warnings, performance improvement plans. There's no evidence in whatever these 27 other years were at whatever organization that the appellant ever performed the role of a collector appropriately, effectively, successfully. So there's plenty of case learning in this circuit. The fact that someone did or has done a task for a long amount of time doesn't mean the person did it well, and especially whereas here the record shows that she didn't, it's certainly important. Another gap between the record and lawyer argument that's critical to the types of things that counsel spoke about this morning is the suggestion that the decision makers on filling these positions were the same decision makers on the reduction in force a few years earlier. They weren't, which is why there's no evidence in the record that they were the same decision makers. Did they go on reports of quality work or something? They went on what was in her file, Judge Seiler, about the written warnings, verbal warnings, things of that nature. They were not the same decision makers. The record evidence is from the person involved in the decision, Lauren Ferguson, who provided an affidavit that said this decision, a hiring decision, was made by the people in HR based on the information they had before them. So the lack of that connection certainly could go back to the prime facia case as to the retaliation claim, but I truly don't think we need to get there because the evidence is so solid. Well, of course, lots of people at the company, or at least some people, knew who she was and knew the company's prior experience with her, although we do have an interesting argument from the plaintiff. On one hand, they claim she should have been considered because of her experience. On the other hand, they say that she was given undue attention because of her prior employment. So we've got two competing arguments, perhaps, but isn't it really a question of fact as to how her prior employment and experience factored into the decision here not to hire her? I'm not saying what import that has, but that's not something we can determine conclusively based on affidavits or representations, since everyone pretty much knew who she was in terms of the decision makers, wouldn't you say? I wouldn't, Your Honor, because if that were the rule, then anyone who had made a complaint, report, or pursued or cooperated in the investigation of any type of discrimination or retaliation would thereafter be completely able to pursue a claim and survive summary judgment just by saying, I engaged in some protected activity, and you can't prove that the protected activity didn't factor into your decision making. I think that's not the case here, where we do have objective evidence. We have objective evidence of all of this taking place, the written warnings, verbal warnings, and everything else, long before any type of protected activity, and notably, the firm hired the appellant at the age of 52. So they certainly knew her age and being in the protected classification when they hired her, and all of the disciplinary actions happened after that. When we talk about decision makers and people with input and so forth, there was a reference to a former supervisor named Kelly Toppin, and the suggestion was that an appellant was qualified because Mr. Toppin gave glowing reviews. A couple things about that. Number one, the record shows Mr. Toppin did not give glowing reviews. The performance reviews that Mr. Toppin gave are in the record. Mr. Toppin gave two reviews, one in February 2010 and one in July 2010. As a result of both of those reviews, in which Mr. Toppin identified the appellant's inability to meet her goals and perform her job, Mr. Toppin placed her on a performance improvement plan. So again, we've got a gap between attorney's statements and record evidence. Weren't there two individuals who provided declarations to the effect that she was a good employee? It's interesting. Judge Murphy, the other person who provided declarations, and just to finish with Kelly Toppin, at the time of the challenge decisions, Kelly Toppin had not worked for the firm for six years. Kelly Toppin was not involved in the decision, didn't provide any inputs. Any knowledge Kelly Toppin had certainly wouldn't be relevant to the decision. The other individual who you mentioned was a Kamal Strouder. Kamal Strouder was a former co-worker of the appellant who essentially just said, she's great, I loved her. The testimony from Kamal Strouder revealed Kamal Strouder had been gone from the firm for five years at that time, had been nothing other than a co-worker, admitted that had no idea what the appellant's goals were, whether she was meeting the goals. Kamal Strouder essentially said that the appellant seemed to be doing well. So the district court properly evaluated both of the declarations and decided they added nothing of consequence to the question of what was taken into consideration at the time of the challenge decision. And two people who had left five and six years earlier certainly didn't fall into that. Can I ask you briefly about this? What is your position? It wasn't clear to me from your brief about the first posting. Did Ms. Brooks obtain the job and then have it rescinded during the background check process? Yes, Ms. Brooks received a conditional offer of employment for the first posting. The offer was conditioned on certain pre-employment screenings that were not properly completed. As that process proceeded, and by the time it did complete, and it was determined Ms. Brooks would not be going into the position, the firm evaluated staffing levels at that point and decided it did not need another collector and canceled that posting. So Ms. Brooks did receive a conditional offer. Can you talk a little bit about the discovery issues and the claim that there should be an adverse inference? Wasn't this part of belated discovery? I can talk about it, although there's nothing before this court to decide on any discovery or adverse inference issues. There were no discovery motions that were ruled on. There wasn't a motion for an adverse inference that was ruled on. There is no final appealable order on any discovery issue or any adverse inference issue. There have been suggestions. This case went through an initial state court filing that went all the way through discovery and was dismissed after summary judgment. It was refiled and went through an entire additional discovery period. Third cases filed went through all discovery in the district court. This case went through an incredible amount of discovery. To the extent an issue was alleged that the appellant was entitled to additional discovery, the district court judge took briefing on that. I made a decision that if certain other documents existed, they should be produced. The district court judge ordered the appellee to provide whatever documents were there and then to certify that that had been completed. The appellee did. There was no follow-up motion challenging the appellee's production as inadequate or anything of that nature. The discovery issue is some suggestion that some documents that we don't even have any idea of whether they exist might have proved some metaphysical harm that we don't know whether is out there. The discovery issues are not before this court. There's no ruling on those discovery issues that has been appealed. I can certainly get into the details of those. I don't think it would be productive use of our time, but I'm obviously happy to answer any questions you may have about these. Did the plaintiff have a job at the time she was replying to this with some other employer? Over the course of the several years that the case was pending, the information provided to us was that the appellant sought other employment other than in some type of part-time capacity. I don't know whether she has been employed today, but the evidence provided to us was that she did not have another job at the time she applied for these two. Whether she's had anything since, I just don't know. There was a question posed to counsel before, and counsel probably said that what we have to think about here is that this is a summary judgment case. But he's right, that doesn't support changing the decision that was made. In fact, it enforces and further supports the decision that was made. Because after extensive discovery, many, many depositions, several rounds of briefing, what the ultimate conclusion was, was that the appellant had failed to come up with record evidence to show that there was a genuine issue of material fact. Your Honor identified that to the extent that this is a pretext case, there is plenty of evidence in the record to show that the appellee's reason for its decision was that she did not have another job at the time she applied for these two. The appellant's decision had a basis in fact. There were three years' worth of performance as a collector. It was marred by unacceptable performance, discipline, counseling, performance improvement plans. There was a basis of fact. That's especially enforced when there was an applicant for the position that's the primary focus here who had more recent and more applicable experience. From pretext standpoint, there's just no evidence in the record that those reasons did not actually motivate the appellee's decision. And certainly, there isn't any evidence in the record that those reasons were insufficient to justify hiring the one individual who was hired over the appellant, given her performance record and the inadequacies with her. They claim this lady who was selected didn't have nearly the background that the plaintiff had, didn't have the experience and so forth. Is that correct? Well, that's what the suggestion was made, Your Honor. All we know about the appellant's background is that she had three years of poor experience as a collector. So that's all we know from what's in the record. So based on what we've presented today and what was presented below and in the briefs, we respectfully request that this Court affirm the decision of the District Court. Thank you. Thank you. With respect to Kelly Toppin, I'd like to clarify that he was her supervisor up until 2012, which is also the same year that Ms. Leeds was then promoted to Quality Assurance Monitor. So he was the most recent supervisor of Ms. Leeds when she was a collector with Weltman and gave her glowing reviews. I mean, to cherry pick a few negative reviews out of four years of glowing performance, a record of glowing performance, to me smacks of not being genuine. As far as the adverse inference, I didn't have time to get into that in my main argument, and I know we briefed that extensively. We had to file a 56-D motion for more discovery because we couldn't even respond to their summary judgment motion because we couldn't get sufficient discovery. What we did get had holes throughout. There was contradictory evidence presented by Weltman, different numbers and lists of applicants, for the two job postings. That alone created genuine issues of fact. I think your opposing counsel said you didn't file an appropriate motion to compel discovery. Well, we did the 56-D motion, Your Honor, and we did the civil rule 56-D motion indicating we needed additional discovery. The court granted that and said, okay, I'm going to grant that. Once they produce that, that's it. Well, that's right. He said he provided the additional discovery. Right. But there was no subsequent contested motions about that or follow-up that you were dissatisfied with the discovery? Well, I would submit that the district court made it very clear that that was going to be it and then it was going to rule on summary judgment. So we incorporated that into our brief in opposition to summary judgment, our supplemental brief in opposition, to point out all these inconsistencies and holes and the fact that they should be stuck with what they produced. If they cannot clarify all these factual issues created by their own discovery, that should go against them and not the appellant to show that there are genuine issues of material fact. Also, I'd like to point out this court's Adai case decided just two months ago, Adai v. Westfield Insurance, where the court held that an appellant need only proffer enough evidence from which a reasonable jury can reject the defendant's articulated reason. We've done that here. We showed that she was not only the plainly qualified candidate, but she also met the alternative standard of being as qualified, if not better qualified, and we've presented a record showing other evidence of discrimination. We have deposition testimony, we have declarations, we have a sham affidavit from Lauren Ferguson, the HR manager, where she clearly contradicts her own deposition testimony, and we go through that in great detail in our briefing. I see my time is up, but I would ask that this court reverse the trial court and allow Ms. Leeds the opportunity to present her case to a jury. Thank you very much and the case is submitted.